## Exhibit List

Exhibit A    Certificate of Death of Verla K. Regnery, dated November 2, 2007

Exhibit B    Verla K. Regnery Irrevocable Trust, dated December 15, 1987 Trust Instrument

Exhibit C    Application for Life Insurance dated January 13, 1988

Exhibit D    Resignation letter of Alvin Kiehl as Trustee, dated November 10, 2006.

Exhibit E    Letter from Alvin Kiehl to Prudential, dated September 28, 2007

Exhibit F    Letter from William Shean to Prudential, dated November 14, 2007

Exhibit G    Letter from Fredrick Regnery to Prudential, dated November 29, 2007

Exhibit H    Letter from Fredrick Regnery to Prudential, dated December 31, 2007

# Exhibit A

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF MARIN
### SAN RAFAEL, CALIFORNIA

**CERTIFICATE OF DEATH**

STATE FILE NUMBER                                   3200721001567

LOCAL REGISTRATION NUMBER

| DECEDENT'S PERSONAL DATA | | |
|---|---|---|
| 1. NAME OF DECEDENT — FIRST (Given) **VERLA** | 2. MIDDLE **KIEHL** | 3. LAST (Family) **REGNERY** |
| | | 4. DATE OF BIRTH **12/07/1918** 5. AGE Yrs **88** 6. SEX **F** |
| 7. BIRTH STATE/FOREIGN COUNTRY **ILL** | 8. SOCIAL SECURITY NUMBER **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** | 9. EVER IN U.S. ARMED FORCES? YES [ ] NO [X] |
| 11. EDUCATION **HS GRADUATE** | 12. WAS DECEDENT HISPANIC/LATINO/SPANISH? YES [ ] NO [X] | 10. MARITAL STATUS **WIDOWED** 13. DATE OF DEATH **11/02/2007** 14. HOUR **0524** |
| 14A. RACE **CAUCASIAN** | | |
| 16. USUAL OCCUPATION **HOMEMAKER** | 17. KIND OF BUSINESS OR INDUSTRY **OWN HOME** | 18. YEARS IN OCCUPATION **30** |

| USUAL RESIDENCE | | |
|---|---|---|
| 19. DECEDENT'S RESIDENCE **125 OAKDALE AVE** | | |
| 20. CITY **MILL VALLEY** | 21. COUNTY/PROVINCE **MARIN** 22. ZIP CODE **94941** 23. YEARS IN COUNTY **CA** | 24. STATE/FOREIGN COUNTRY **CA** |

| INFORMANT | | |
|---|---|---|
| 25. NAME OF INFORMANT, RELATIONSHIP **GRETCHEN WALLERICH, DAUGHTER** | 27. INFORMANT'S MAILING ADDRESS **125 OAKDALE AVE, MILL VALLEY, CA 94941** | |

| SPOUSE AND PARENT INFORMATION | | |
|---|---|---|
| 28. NAME OF SPOUSE — FIRST | MIDDLE | LAST (Maiden Name) |
| 30. NAME OF FATHER — FIRST **WILLIAM** | MIDDLE | LAST **KIEHL** BIRTH STATE **CHICAGO** |
| 32. NAME OF MOTHER — FIRST **STELLA** | MIDDLE | LAST **ALTES** BIRTH STATE **CHICAGO** |

| FUNERAL DIRECTOR/LOCAL REGISTRAR | | |
|---|---|---|
| 35. DATE **11/15/2007** | 36. PLACE OF FINAL DISPOSITION **BRONZEWOOD CEMETERY** | |
| 37. | **HINSDALE, IL** | 39. NOT EMBALMED |
| 40. NAME OF FUNERAL ESTABLISHMENT **NEPTUNE SOCIETY OF NO. CA** | **1419** | 43. SIGNATURE OF LOCAL REGISTRAR **FRED S SCHWARTZ, MD** **11/15/2007** |

| PLACE OF DEATH | | |
|---|---|---|
| 101. PLACE OF DEATH **MARIN TERRACE** | | |
| **MARIN** | 103. FACILITY ADDRESS **297 MILLER AVE** | **MILL VALLEY** |

| CAUSE OF DEATH | | |
|---|---|---|
| 107. CAUSE OF DEATH IMMEDIATE CAUSE (A) **DEBILITY** | | **MTHS** K607-1109-1 |
| (B) **ALZHEIMER'S DISEASE** | | **YRS** |
| OTHER SIGNIFICANT CONDITIONS **CORONARY ARTERY DISEASE, DIABETES MELLITUS** | | |
| AUTOPSY **NO** | | |

| PHYSICIAN'S CERTIFICATION | | |
|---|---|---|
| 116. SIGNATURE AND TITLE OF CERTIFIER **GERALD C FREEDMAN M D** | 117. LICENSE NUMBER **C31655** | **11/13/2007** |
| 09/01/1993     10/23/2007 | 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE **3 HARBOR DRIVE #111, SAUSALITO, CA 94965** | **GERALD C FREEDMAN M.D.** |

| CORONER'S USE ONLY | | |
|---|---|---|
| 122. PLACE OF INJURY | 124. | 126. INJURED AT WORK? |
| 127. DESCRIBE HOW INJURY OCCURRED | | |
| 128. LOCATION OF INJURY | | |
| 130. SIGNATURE OF CORONER | 131. DATE | |

| STATE REGISTRAR | A | B | C | D | E |
|---|---|---|---|---|---|

FAX AUTH #        CENSUS TRACT

### CERTIFIED COPY OF VITAL RECORDS

STATE OF CALIFORNIA
COUNTY OF MARIN } SS    DATE ISSUED
**11 / 15 / 2007**

*000329418*

This is a true and exact reproduction of the document officially registered and placed on file in the Vital Records Section, Marin County Public Health Department.

*Fred S. Schwartz, m.d.*

HEALTH OFFICER
MARIN COUNTY, CALIFORNIA

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar

**ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE**

## STATE OF CALIFORNIA
### CERTIFICATION OF VITAL RECORD

# COUNTY OF MARIN
### SAN RAFAEL, CALIFORNIA

**AFFIDAVIT TO AMEND A RECORD**

STATE FILE NUMBER

**DEATHS AFTER 1-1994**

NO ERASURES, WHITEOUTS, PHOTOCOPIES, OR ALTERATIONS

1:1

3200721001567

LOCAL REGISTRATION DISTRICT AND CERTIFICATE NUMBER

**PART I    INFORMATION TO LOCATE RECORD—TYPE OR PRINT IN BLACK INK ONLY**

| | | | |
|---|---|---|---|
| NAME AS IT APPEARS ON RECORD | 1 NAME—FIRST (GIVEN)<br>VERLA | 2 MIDDLE<br>KIEHL | 3 LAST (FAMILY)<br>REGNERY |
| ADDITIONAL INFORMATION TO LOCATE RECORD | 4 SEX<br>F | 5 DATE OF EVENT—MM/DD/CCYY<br>11/02/2007 | 6 CITY OF OCCURRENCE<br>MILL VALLEY | 7 COUNTY OF OCCURRENCE<br>MARIN |
| | 8 FATHER S/PARENTS NAME AS STATED ON ORIGINAL<br>WILLIAM - KIEHL | | 9 MOTHER S/PARENTS NAME AS STATED ON ORIGINAL<br>STELLA - ALTES |

**PART II    STATEMENT OF CORRECTIONS—NO ERASURES, WHITEOUTS, OR ALTERATIONS**

| | 10 CERTIFICATE ITEM NUMBER | 11 INFORMATION AS IT APPEARS ON ORIGINAL RECORD | 12 INFORMATION AS IT SHOULD APPEAR |
|---|---|---|---|
| LIST ONE ITEM PER LINE | 31 | WILLAIM | WILLIAM |
| | 34 | CHICAGO | IL |
| | 38 | CHICAGO | IL |
| | 40 | BRONZEWOOD CEMEMTERY, HINSDALE, IL | BRONZEWOOD CEMETERY, HINSDALE, IL |

2 OF 2

| | |
|---|---|
| REASON FOR CORRECTION | 13 MISTAKES IN BOX 24,28,31, AND 40 |

AFFIDAVITS AND SIGNATURES — We, the undersigned, hereby certify under penalty of perjury that we have personal knowledge of the above facts and that the information given above is true and correct.

| | | | |
|---|---|---|---|
| TWO PERSONS MUST SIGN THIS FORM | 14 SIGNATURE OF FIRST PERSON<br>BRITTNY JONES | 15 TITLE/RELATIONSHIP TO PERSON IN PART I<br>FUNERAL ARRANGER | 16 DATE SIGNED—MM/DD/CCYY<br>11/15/2007 |
| | 17 AGE<br>ADULT | 18 ADDRESS (STREET CITY STATE ZIP)<br>1780 GRANT AVE, NOVATO, CA 94945 | |
| USE BLACK INK ONLY | 19 SIGNATURE OF SECOND PERSON<br>TY GILLIAM | 20 TITLE/RELATIONSHIP TO PERSON IN PART I<br>BRANCH DIRECTOR | 21 DATE SIGNED—MM/DD/CCYY<br>11/15/2007 |
| | 22 AGE<br>ADULT | 23 ADDRESS (STREET CITY STATE ZIP)<br>1780 GRANT AVENUE, NOVATO, CA 94945 | |
| STATE/LOCAL REGISTRAR USE ONLY | 24 SIGNATURE OF STATE OR LOCAL REGISTRAR<br>FRED S SCHWARTZ, MD | | 25 DATE ACCEPTED FOR REGISTRATION—MM/DD/CCYY<br>11/15/2007 |

STATE OF CALIFORNIA, DEPARTMENT OF HEALTH SERVICES OFFICE OF VITAL RECORDS

**CERTIFIED COPY OF VITAL RECORDS**

*0020700007921*

STATE OF CALIFORNIA
COUNTY OF MARIN } SS    DATE ISSUED

11/15/2007

*000329419*

This is a true and exact reproduction of the document officially registered and placed on file in the Vital Records Section, Marin County Public Health Department.

This copy not valid unless prepared on engraved border displaying seal and signature of Registrar.

*Fred S. Schwartz, M.D.*

HEALTH OFFICER
MARIN COUNTY, CALIFORNIA

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# Exhibit B

SMF/gj                11/10/87

## VERLA K. REGNERY 1987 IRREVOCABLE TRUST

I, VERLA K. REGNERY, Burr Ridge, Illinois, this *15* day of *December* 1987, hereby appoint my brother, ALVIN KIEHL, of LaGrange, Illinois, as Trustee (hereinafter referred to as "the Trustee") and deliver to the Trustee the sum of Ten Dollars, receipt of which is hereby acknowledged. Such property and any other property which may hereafter be transferred to the Trustee, by Will or otherwise, by me or any other person, shall be held, administered and distributed by the Trustee under the trusts hereinafter set forth.

### ARTICLE I

### Trust Irrevocable

This trust shall be irrevocable and, notwithstanding any other provision of this Agreement, I shall have no right of power to alter, change, amend or revoke this Agreement or the terms of the trusts hereby created in any respect, or to change the enjoyment, including the time of enjoyment by the beneficiaries hereunder, or to participate in the appointment of a successor Trustee or to do anything which would prevent the gift to the Trustee from being complete for gift and estate tax purposes.

### ARTICLE II

### Right to Withdraw Contributions

A.  Prior to termination of the trust, the eligible person or persons referred to below shall have the right, with respect to any contribution to the trust estate, to give

SMP/gj                    11/10/87

directions and make withdrawals from the trust estate in accordance with the following provisions:

(1)  With respect to any part or all of any such contribution, the person making, or deemed to be making, the contribution (referred to hereinafter as the "contributor") may deliver to the Trustee an instrument (referred to hereinafter as the "notice of contribu- tion") designating one or more persons as having a right of withdrawal or as having a right of direction and withdrawal (referred to hereinafter as the "right of withdrawal") upon such terms and conditions as the contributor may specify.  Except as specifically provided otherwise in the notice of contribution, the following provisions of this Paragraph A shall apply to each such contribution.

(2)  With respect to any part or all of the contribution not so designated (unless the contributor provides to the contrary), I hereby designate each of my then living descendants, in equal shares as having such right of withdrawal.

(3)  Each person designated as having a right of withdrawal shall be referred to herein as an "eligible person."

(4)  As promptly as possible after receiving a designation (or a contribution without a designation), the Trustee shall give each eligible person written notice of such eligible person's right of withdrawal.

(5)  To the extent a contribution consists of cash or property (other than a life insurance contract or interest in a group life insurance plan), each eligible person may withdraw that portion of such contribution specified in subparagraph A(1) or A(2) or both above.

(6)  To the extent a contribution consists of a life insurance contract or interest in a group life insurance plan, and if the Trustee does not then have sufficient cash or other property on hand to satisfy all rights of withdrawal timely exercised, with respect to such contribution, the Trustee shall offer to sell the contract or interest to the contributor (or, if the contributor refuses or fails to purchase such contract or interest within thirty (30) days after being requested to do so, to the insurer or to any person who has an insurable interest in the life of the insured) in which event the Trustee shall distribute the proceeds of such sale in satisfaction of each eligible person's

-2-

SMP/gj                    11/10/87

right of withdrawal with respect to such contract or interest.

(7)  For the purposes of this Paragraph A, a contribution to the trust estate shall include any cash or other property, including a life insurance contract or interest in a group life insurance plan, which is transferred to the Trustee to be held, administered and distributed as part of the trust estate, and shall also include any premium on a life insurance contract or interest in group life insurance plan held as part of the trust estate which is paid, by the insured or any other person, directly to the insurance company which issued the contract rather than first being paid to the Trustee.  In the case of any premium paid directly to an insurance company, the date of the contribution shall be deemed to be the date on which the premium payment is transmitted to the insurance company.  The amount of any contribution to the trust estate shall be the value of the contribution for Federal estate and gift tax purposes.

(8)  Notwithstanding anything to the contrary, the exercise of any right of withdrawal may be satisfied, in whole or in part, by distribution of cash or other property (including a life insurance contract or interest in a group life insurance plan) other than the cash or other property comprising the contribution.

(9)  A right of withdrawal described in subparagraph A(5) and A(6) above shall be exercised, if at all, by a written direction received by the Trustee no later than thirty (30) days after the Trustee has given the notice described in subparagraph A(4) above or the contribution is made, whichever date occurs later.  Subject to subparagraph A(10) below, such right of withdrawal shall expire and terminate at the end of such thirty (30) day period or upon the death of such eligible person, whichever occurs first.

(10)  Any notice from or direction to the Trustee shall be deemed to have been given on the date when the same is mailed or personally delivered to the addressee.

B.  No Trustee shall be personally liable for any action taken or not taken by such Trustee upon a good-faith determination by the Trustee whether a power of withdrawal under Paragraph A has been effectively exercised and such action or nonaction and such determination shall be conclusive and binding on all parties.

-3-

SMP/gj                        11/10/87


### ARTICLE III

Distribution of Income and
Principal During My Life

During my life the Trustee may distribute all or any part of the income and principal from the trust estate in such amounts and at such times as the Trustee may deem necessary or advisable to any one or more of the following persons living at the time of such distribution:  my siblings, my descendants and the spouses of my siblings and my descendants; for the health, education, support or maintenance in reasonable comfort of any one or more of them, giving such consideration as the Trustee may deem appropriate to all other income and assets of such persons known to the Trustee.

### ARTICLE IV

Disposition of Trust Estate Upon my Death

Section 1. Division into Separate Trusts

Upon my death, the trust estate shall be divided into as many separate trusts, equal in value, as I have children then living and children who predeceased me leaving one or more descendants then living.  The Trusts shall be severally known and designated by the respective names of such children and referred to hereinafter individually for convenience as a "Child's Trust".

Section 2.  Distribution of Income

A.  All of the net income of a Child's Trust shall be distributed not less frequently than quarterly to the child by whose name the trust is designated during such child's lifetime.

-4-

SMP/gj                    11/10/87

       B.  From and after the death of such child, all of the
net income of a Child's Trust shall be distributed, per stirpes,
to such child's then living descendants.

              Section 3.  Distribution of Principal

       From time to time, the Trustee may distribute all or any
part of the principal from a Child's Trust designated by the name
of a child of mine in such amounts as the Trustee may deem neces-
sary or advisable to any one or more of the following persons
living at the time of such distribution:  such child, such child's
surviving spouse and such child's then living descendants, giving
such consideration as the Trustee may deem appropriate to all
other income and assets of such persons known to the Trustee.  No
charge shall be made against the share of principal to be distri-
buted upon final termination of such trust to any descendant of
such child on account of such discretionary distributions of prin-
cipal.  At such times as a Trustee acting hereunder shall have the
discretion under this Paragraph to distribute principal to himself
or herself, such distributions shall be made solely for his or her
health, education, support or maintenance in reasonable comfort.

              Section 4.  Power of Appointment

       Upon the death of the survivor of myself and the child
by whose name the trust is designated, a Child's Trust shall
continue to be held in trust hereunder for the benefit of, or be
distributed to or in trust for the benefit of, any one or more of
my descendants (other than such child), their surviving spouses
and Charity, in such shares, portions and estates and in such

                              -5-

SMP/gj                    11/10/87

manner and upon such terms, trusts and conditions and with such
powers, including additional powers of appointment, as such child
shall appoint by Will specifically referring to this power of
appointment (provided that, with respect to the "nonexempt
portion" of such trust, as defined in Section 2632(c)(2) of the
Code, or, if such trust has been divided as provided in
subparagraph B(1) of the Article entitled "General Provisions,"
with respect to the "nonexempt trust," such child's power of
appointment shall include the creditors of such child's estate).
My child may exclude any one or more of the above class, make
unequal provisions among them, and appoint the income for life or
for any other period.  In default of the exercise of the power of
appointment, or insofar as an exercise does not extend or take
effect, the Trustee shall hold, administer and distribute the
trust designated by the name of such child under the provisions of
this Section.

> ### Section 5.  Termination of Child's Trust

A.  Subject to an effective exercise of the power of
appointment given to a child of mine in Section 4, a Child's Trust
shall terminate upon the date on or after the death of the
survivor of myself and the child by whose name such trust is
designated as there are no living grandchildren of such child
under the age of twenty-one years.

B.  Upon termination, a Child's Trust shall, subject to
the provisions of Section 7, be distributed, per stirpes, to the
then living descendants of the child by whose name such trust is

-6-

SMP/gj                    11/10/87'

designated; or, if no descendant of such child is then living, per
stirpes, to my then living descendants, provided that a share of
such trust which is distributable to a descendant of mine for
whose benefit a trust under this Article is still in existence
shall not vest in such descendant but shall instead be distributed
to the then acting Trustee of such trust to be added to such trust
and held, administered and distributed under the provisions of
this Article.

Section 6. Division of Child's Trust into Separate Trusts

On the death of the child by whose name the Child's
Trust is designated or on my death if such child does not survive
me, the Trustee may, if the Trustee deems it advisable, divide
such Child's Trust into as many separate trusts of equal value as
there are children of such child then living and children of such
child who predeceased such child leaving one or more descendants
then living. Such separate trusts shall be held, administered and
distributed as if such grandchild of mine for whom a separate
trust is created took the place of the parent who is the child
referred to in Sections 2 through 5 of this Article IV. Such
separate trusts shall be designated by the names of such grand-
children of mine for whom trusts are created respectively.

Section 7. Perpetuities Provision

Each trust hereunder shall, in the latest event,
terminate no later than twenty-one years after the death of the

-7-

SMP/gj                    11/10/87

survivor of myself and such of my descendants and those persons

who are or become spouses of such descendants as are living at the

date this Agreement becomes irrevocable, within the meaning of the

applicable law concerning perpetuities.

### ARTICLE VII

### General Provisions

A.  For all purposes under this Agreement:

(1)  When discretion is given to distribute income
or principal among a group of persons, the Trustee may
make equal or unequal distributions to such persons, may
exclude any one or more of them and may accumulate the
entire income or any part thereof.

(2)  In determining the persons who from time to
time are children or descendants, only those persons
shall qualify who at the time the determination is made
had been:

(a)  born in lawful wedlock;

(b)  legitimatized by a subsequent marriage or
other action prior to the time of such
determination; or

(c)  adopted prior to attaining the age of
eighteen years;

regardless of whether such event occurred prior to or
after the date of my death.  A power of appointment may,
however, be exercised in favor of one or more descen-
dants not born in lawful wedlock and not subsequently
legitimatized if the exercise of the power specifically
so directs, but no such direction shall arise by implica-
tion.

(3)  The following words shall have the following
meanings:

(a)  "surviving spouse" shall mean the person
to whom a deceased person was married and with whom
such person was living as husband and wife at the
time of his or her death;

(b)  "disability" shall mean a legal, mental
or physical condition which in the judgment of the

-8-

SMP/gj                        11/10/87

        Trustee renders a person incapable of properly
managing his or her own affairs;

           (c)  "powers" shall include rights, duties,
options, privileges, discretions, judgments and
immunities;

           (d)  "gifts" shall include legacies, bequests,
devises and lifetime transfers;

           (e)  "Charity" shall mean charitable,
religious, scientific, literary or educational
organizations, contributions to which would be
deductible for Federal estate tax purposes;

           (f)  "Code" shall mean the Internal Revenue
Code of 1986, as amended from time to time;

           (g)  "Independent Trustee" shall exclude any
other person who, at the time a determination of
status is required, is a permissible recipient of
income or principal from the trust involved or is
legally obligated to support an individual who is
then a permissible recipient of income or principal
from such trust.

    (5)  Upon termination of an interest in a trust,
accrued and undistributed income shall, except to the
extent effectively appointed, retain its character as
income and be held or distributed in the same manner as
if it had accrued or been received after the termination
of such interest.

B.  In the discretion of the Trustee:

    (1)  If a trust hereunder would be partially exempt
from the Generation-Skipping Tax by reason of an
allocation of "the unused portion of an individual's GST
Exemption" (as defined in Section 2632(b)(2) of the
Code) to it, before such allocation is made, the
Trustees may divide such trust into two separate trusts
of equal or unequal value, to permit allocation of such
GST Exemption solely to one trust (hereinafter referred
to as the "exempt trust"), which shall as a result be
entirely exempt from such tax.  The other trust shall
hereinafter be referred to as the "nonexempt trust."  In
addition, if a trust hereunder is entirely exempt or
nonexempt from the Generation-Skipping Tax and adding
property to it would partially subject it to the
Generation-Skipping Tax, the Trustee may hold such
property as a separate trust in lieu of making the
addition.

-9-

SMP/gj                        11/10/87

(2)  Except as otherwise provided in this instrument, the resulting separate trusts shall have the same terms and conditions, subject to the limitations upon distributions from exempt trusts hereinafter imposed.

(3)  Upon division or distribution of an exempt trust and a nonexempt trust held hereunder, the Trustee may allocate property from the exempt trust first to a share from which a generation-skipping transfer is more likely to occur.

(4)  Absent division into two trusts, after such allocation, the Trustee shall adjust the "nonexempt portion" of the trust (as defined in Section 2632(c)(2)(B) of the Code) from time to time as follows:  upon each payment or distribution from the trust, the "non-exempt portion" shall be a fraction in which the numer-ator and denominator shall be the values of the nonex-empt portion and the trust, respectively, immediately prior to such payment or distribution; then (a) the amount of a payment or distribution chargeable to the nonexempt portion shall be subtracted from both numerat-or and denominator (except that the numerator shall not be reduced below zero); or (b) the amount of a payment or distribution chargeable to the exempt portion shall be subtracted from the denominator (except that the fraction shall not exceed 1/1).

(5)  No discretionary distribution of income or principal shall be made to a "non-skip person" (as defined in Section 2613(b) of the Code) or for the tuition or medical expenses of a "skip person" (as defined in Section 2613(a) of the Code) from the exempt portion of such trust (or from an exempt trust) so long as the nonexempt portion of such trust (or the nonexempt trust) is still in existence.

(6)  If a discretionary distribution of income or principal is a "taxable distribution" (as defined in Section 2612(b) of the Code), such distribution may be augmented by an amount that the Trustee estimates to be sufficient to pay the Generation Skipping Tax payable by the distributee.  Such distributions shall be charged to the nonexempt portion of such trust.

(7)  The Trustee shall pay the Generation Skipping Tax assessed upon a "taxable termination" (as defined in Section 2612(a) of the Code) or a "direct skip" (as defined in Section 2612(c) of the Code) the nonexempt portion of the trust, without adjustment of the relative interest of the beneficiaries.

-10-

SMP/gj                    11/10/87

C.  If the Trustee determines it to be in the best interests of a beneficiary, income or a discretionary distribution of principal which would otherwise be distributed to such beneficiary may instead be expended for the benefit of such beneficiary and the Trustee shall be entitled to full credit for each such expenditure.

D.  Property (including income or principal) which the Trustee is prepared to distribute to a beneficiary who is under the age of twenty-one years or under a disability shall immediately vest in such beneficiary, but such property shall be distributed for the benefit of such beneficiary in any one or more of the following methods as selected by the Trustee:  (1) outright to such beneficiary (even though a minor), (2) to the guardian of the estate of the beneficiary, (3) to a Trustee hereunder, the beneficiary's spouse or guardian of the person, an adult relative of the beneficiary, or any adult with whom such beneficiary is residing, as Trustee of a separate trust under this Article, or (4) to anyone, including a Trustee hereunder, as custodian under any Uniform Gifts (or Transfers) to Minors Act.  The Trustee shall be entitled to full credit for each such distribution.  A Trustee under this Article shall have the same powers given to the other Trustees under this Agreement and may from time to time distribute or expend so much or all of the income and principal as such Trustee may deem necessary or appropriate to or for the benefit of the beneficiary.  When the beneficiary attains the age of twenty-one years or the disability is removed, whichever is later (and in

-11-

SMP/gj                    11/10/87

any event when the permitted period for retaining the trust estate shall expire), the balance of the trust estate shall be delivered to the beneficiary.  If the beneficiary dies prior to final distribution, the trust estate shall be distributed as part of such beneficiary's estate.

E.  Such of the following persons who are of age, under no disability and stand in the relationship indicated to the beneficiary, in the order named, are authorized to act for a beneficiary who is under the age of twenty-one years or under a disability in connection with the administration of a trust, including receiving and approving any accounting, appointing a successor Trustee, executing any receipt, and giving and receiving any notice (all without appointment of a guardian _ad litem_): guardian of the estate, guardian of the person, spouse, parents (or surviving parent) children (or surviving child), nearest blood relative, or person standing _in loco parentis_.

F.  If a trust (hereinafter referred to as the "terminated trust"), whether or not created hereunder, would have been entitled to receive property upon termination of a trust hereunder (hereinafter referred to as the "terminating trust") but, by its own provisions, it was never funded or had already terminated, and if no alternative disposition of such property is provided for hereunder, the Trustee of the terminating trust shall distribute such property in the manner directed in the terminated trust and to the persons entitled to receive the terminated trust

-12-

SMP/gj                   11/10/87

estate upon its termination as if such termination had occurred at

the time of the termination of the terminating trust.

G.  Notwithstanding anything contained herein to the

contrary, if at any time the value of the principal of a trust

hereunder shall be such that the Trustee deems the continuation of

the trust to be uneconomical and not in the best interests of the

current beneficiaries thereof, the Trustee shall distribute such

trust to one or more of the persons to whom income of such trust

could then be distributed, in such amounts as the Trustee may deem

advisable considering the best interests and welfare of all such

persons, individually and as a group, and the effect of any

present or future tax laws.

H.  A trust which is not required to distribute all of

its income currently shall also be governed by the following:

(1)  distributions within the period permitted by
applicable tax laws (currently the first sixty-five days
of a tax year) to be treated as made in a preceding tax
year shall be treated for trust accounting purposes as
having been made as of the last day of the preceding tax
year if an appropriate election under applicable tax
laws is properly made by the Trustee, and any
undistributed income which is on hand at the end of a
tax year and which has not been so distributed and
treated shall be added to the principal of the trust
estate from which it was derived as of the end of such
year;

(2)  before an election is made with respect to
accumulating income for any tax year the Trustee shall
consider the tax effects of probable accumulations or
distributions of income from other trusts known to the
Trustee with a view toward minimizing present and future
income, throwback and transfer taxes, and the Trustee
shall not be liable for elections made in reliance upon
the advice of counsel; and

(3)  to the extent permitted by law or regulations,
the Trustee may allocate excess estimated income tax

-13-

SMP/gj                         11/10/87

payments by the trust among the beneficiaries with a view toward minimizing overall income taxes. The Trustee shall not be liable for any election or allocation made under this Paragraph upon the advice of counsel.

I.  The present or future interests of any person in income or principal shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered. This paragraph shall not limit the exercise of any power of appointment or affect a person's ability to disclaim or release any interest or power in whole or in part.

J.  For investment purposes, undistributed income may be allocated to principal at any time, in the sole discretion of the Trustee.

K.  Notwithstanding anything contained herein to the contrary, no beneficiary, individually or as Trustee, shall have a voice in the exercise of any discretion by the Trustee with respect to the distribution of income or principal or any right to initiate or compel a distribution which is in the sole discretion of the Trustee.

L.  Any power (including those given to a fiduciary) may be irrevocably released, in whole or in part, in the manner provided by the Illinois Termination of Powers Act.

M.  Notwithstanding anything contained herein to the contrary, no distribution of income or principal to a beneficiary for whose support some person is legally obligated shall ever be deemed to discharge such legal obligation of support.

-14-

SMP/gj                    11/10/87

## ARTICLE VIII

### Administration Provisions

#### Section 1.  Resignation, Replacement of Trustees

A.  Any Trustee may resign from any one or more trusts by giving written notice of such resignation to the co-Trustee then acting, if any, and those persons to whom income may then be distributed from each of the trust estates affected.

B.  Vacancies in the office of Trustee shall be filled as provided in this Section.  A vacancy shall occur upon a Trustee's death, resignation, inability or refusal to act.

C.  Upon the creation of a Child's Trust, if the child by whose name the Child's Trust is designated is then living, the then acting Trustee or Trustees shall be removed and I appoint such child as successor Trustee.

D.  Each Trustee and each Trustee's successor, while acting as Trustee may from time to time (1) appoint a corporate co-Trustee successor and (2) remove such co-Trustee.

E.  Each Trustee and each Trustee's successor, while acting as Trustee may from time to time (1) designate a successor or a series of successors to fill a vacancy in the office of such Trustee, and (2) revoke, in whole or in part, a designation previously made, but the power to revoke shall extend only to designations made by the Trustee exercising the power.  The oldest unrevoked designation, whether made by a current or prior Trustee, shall have priority.

-15-

SMP/gj                    11/10/87

F.  If a vacancy in the office of Trustee is not filled within sixty days by a designated successor accepting the office, a successor Trustee may be appointed by a majority in number of the persons to whom income may then be distributed from the trust estate affected.

G.  A vacancy in the office of Trustee of a trust under the General Provisions shall be filled by the beneficiary for whom the trust is held appointing a successor Trustee.

H.  Each designation, revocation, acceptance and appointment shall be in writing signed by the maker(s), placed with the trust records and copies shall be given to each coTrustee then acting, if any.

I.  Any bank or trust company authorized by law to administer trusts and having a combined capital and surplus of not less than Ten Million Dollars or any individual may become a successor Trustee; provided, however, during my lifetime no individual may become a successor Trustee (other than of a trust under the General Provisions) if such individual would not qualify as an Independent Trustee.

J.  Each successor Trustee shall, without the necessity of a conveyance, have the same estates, trusts and powers as the prior Trustee.  Each successor Trustee shall give a copy of the acceptance of office and designation, if any, by which the successor was appointed to each of the persons to whom income may then be distributed.

-16-

SMP/gj                    11/10/87

K.  No successor Trustee shall be required to examine
the accounts or records or be responsible for the acts of any
prior Trustee.  Each successor Trustee may accept a final
accounting of the prior Trustee as conclusive of the amount,
nature and allocation of trust assets.

L.  The approval of the accounts and the ratification of
the acts of a Trustee by a majority in number of the persons to
whom income may then be distributed from the trust estate affected
shall be final and binding on all beneficiaries.

### Section 2.  Concerning the Trustees

A.  Each Trustee (other than a sibling or descendant of
mine or spouse of a sibling or descendant of mine) shall receive
reasonable compensation for services.  A Trustee's regular
compensation shall be charged half against income and half against
principal, except that the Trustee shall have full discretion to
charge a larger portion or all of such compensation against
income.

B.  No Trustee shall be required to give any bond for
security.  No Trustee shall be required to qualify before or, in
the absence of an alleged breach of trust, account to any court.

C.  No Trustee shall be liable for any action taken in
accordance with the opinion of counsel.

D.  The Trustee shall send an annual accounting within a
reasonable time after the end of each tax year to each of the
persons to whom income could have been distributed during such
year.

-17-

SMP/gj                    11/10/87

E.  Whenever more than one Trustee is acting, the following provisions shall apply:

(1)  The word "Trustee" shall mean "Trustees" unless the context clearly indicates to the contrary;

(2)  The Trustees shall appoint one of their number as "custodian," provided that when a corporate Trustee is acting, it shall always act as custodian. The Trustee acting as custodian shall be the custodian of all trust property and of the books and records of the Trustees, and may perform for the Trustees all acts necessary for the acquisition and transfer of personal property and money, including the signing and endorsement of checks, receipts, stock certificates and other instruments;

(3)  A co-Trustee may, from time to time, by a written instrument delivered to the other co-Trustee, delegate to such other Trustee any or all powers under this Agreement, including the power to convey real estate property, either for a specified time or until the delegation is revoked by a similar instrument.

F.  Persons dealing in good faith with a Trustee shall not be obligated to see to the application of any money or property delivered to such Trustee and may rely without inquiry upon such Trustee's certificate that the trust involved is in full force and effect, that such Trustee is authorized to act and that such Trustee's act is in accordance with the provisions of this Agreement.

Section 3.  Trustee Powers

A.  The Trustee shall have and exercise, without authorization from any court, the following enumerated powers and, in addition, all powers granted to fiduciaries under laws which are not inconsistent herewith:

(1)  to sell, contract to sell and grant options to purchase any property at public or private sale, for cash or on credit, and to exchange any property for other property;

-18-

SMP/gj                    11/10/87

(2)  to enter into leases for any period of time, even though extending beyond the termination of the trust;

(3)  to borrow money or extend existing loans, including loans from the banking department of a corporate Trustee, and to mortgage, pledge or otherwise encumber any property;

(4)  to grant easements; to subdivide real estate; to operate, maintain, repair, rehabilitate, alter, erect, demolish or remove any improvements on real estate; to give consents and enter into contracts relating to real estate or its use; to dedicate or release any interest in real estate;

(5)  to transfer from time to time the situs of any property to another jurisdiction; to designate or appoint a trustee to act in any other jurisdiction as sole trustee or co-trustee of any property located in such other jurisdiction; to confer upon the appointed trustee any or all powers of a Trustee under this Agreement; to remove the appointed trustee and appoint another, including the appointing Trustee, at will.  The Trustee may act as adviser to the appointed trustee and, if entitled to compensation for acting as Trustee, shall receive reasonable compensation for acting as adviser;

(6)  to exercise all powers of an individual owner with respect to shares of stock, bonds or other securities, including exercising any stock option, voting, giving proxies, participating in voting trusts, mergers, consolidations, foreclosures, reorganizations or liquidations, and exercising or selling subscription or conversion rights;

(7)  to pay taxes (including interest and penalties) and reasonable expenses incurred in administering the trust;

(8)  to employ (with or without discretionary powers) with reasonable compensation attorneys, accountants, investment counsel and other agents, even though a Trustee may be a partner or shareholder thereof or affiliated therewith; provided that outside invest-ment counsel may be retained while a corporate Trustee is acting only with the consent or at the direction of two-thirds of the adult persons who are under no disa-bility and to whom income may then be distributed from the trust affected;

(9)  to contest, prosecute, compromise or abandon claims (including taxes and interest and penalties

-19-

SMP/gj                          11/10/87

thereon) or other charges in favor of or against the
trust;

(10) to execute contracts, notes, conveyances and
other instruments, including indemnities in connection
with stock offerings and the like, whether or not
containing covenants and warranties binding upon and
creating a charge against trust property or excluding
personal liability;

(11) to receive additional property from any
source, and, in the absence of any direction, to hold,
administer and distribute such property as if it were
part of the trust estate;

(12) to invest in or hold undivided interests in
property; to make joint investments for any two or more
trusts, crediting each trust with an undivided interest
in such investment in proportion to its contribution;

(13) to acquire, invest, reinvest, exchange,
retain, sell and manage principal and (pending
distribution or accumulation) income in every kind of
property, real, personal or mixed, and every kind of
investment, without being limited by any statute re-
stricting investments by fiduciary, without being re-
quired to maintain any particular ratio between fixed
income securities and equity investments and regardless
of lack of diversification;

(14) to satisfy pecuniary gifts and distribute
property or the proceeds of property ("assets") in cash
or in kind or both, and to distribute different kinds or
disproportionate shares of assets to the various trusts
and beneficiaries, irrespective of the income tax basis
of such assets and without adjustment for variations
in such basis, and for that purpose to value assets divided
or distributed in kind;

(15) to deal with the fiduciary of any other trust
or estate notwithstanding the fact that such person is a
Trustee of a trust under this Agreement;

(16) to exercise every power or right and to make
elections afforded by applicable revenue or other laws,
including, without being limited to: (a) the right to
defer or make installment payments of any taxes; (b) the
election to value assets on a date or dates other than
that of my death and to value qualified real property
according to a special use; (c) the privilege of
deducting expenses from either income or principal in
computing taxes; and (d) the right to allocate my
generation-skipping tax exemption as the fiduciaries

-20-

SMF/gj                    11/10/87

deem advisable, except that such exemption shall be
allocated (i) first to property given by me rather than
by another or appointed by me and (ii) to a direct skip
caused by a disclaimer only if no other allocation is
possible.  Determinations by the fiduciaries under this
subparagraph shall be made without regard to the
relative interest of the beneficiaries and shall not be
subject to question by any person.  No adjustment shall
be made between principal and income or in the relative
interests of the beneficiaries to compensate for the
effect of actions taken or not taken by a fiduciary
under this subparagraph;

     (17)  to cause stocks, bonds and other property,
real or personal, to be registered and held in the name
of a nominee without mention of the trust in any
instrument or record constituting or evidencing title
thereto, provided that the Trustee shall be liable for
the acts of each such nominee with respect to any
investment so registered or held.  The records of the
Trustee shall show at all times the ownership of such
investments so registered or held and such investments
shall be kept in the control of the Trustee separate and
apart from its individual investments;

     (18)  to presume that a person died intestate
unless within three months after such person's death the
Trustee has actual notice of the existence of a Will or
probate proceedings to establish a Will; to rely upon a
court order, certificate, affidavit, letter or other
evidence reasonably believed to be genuine; on the basis
of any such evidence to exercise any power or make any
payment, distribution, or reimbursement.  These
provisions shall protect the Trustee from liability for
actions taken in good faith, but shall not affect any
rights an appointee, taker in default, or other
beneficiary may have against persons to whom distribu-
tions are erroneously made;

     (19)  to utilize capital gains in determining the
amounts of principal to be distributed in any tax year
and from time to time to distribute any portion or all
of the capital gains so utilized by so designating on
the books of account and tax returns, if in the judgment
of the Trustee there are significant over-all income tax
savings to be gained by making such distribution;

     (20)  to continue any business and participate in
its management, directly or indirectly, with appropriate
compensation from the business, even though a Trustee
may also have an interest in the business; to enter into
new partnership agreements or to incorporate the
business; to increase the investment in the business,

                        -21-

SMP/gj                     11/10/87

and to make secured or unsecured loans to the business
or to pledge property for debts of the business; and to
waive the filing by the surviving partners of any
partnership inventory, appraisal, account, bond or
security;

(21) to continue operation of any farm or ranch
property; to lease on shares; to purchase, lease and
sell farm or ranch equipment, livestock and produce of
all kinds; to enter into government programs; to engage
agents, managers and employees and delegate powers to
them;

(22) to drill, mine and otherwise explore and
operate for the development of oil, gas and other
minerals; to enter into contracts relating to the
installation and operation of absorption and
repressuring plants; to enter into unitization or pool-
ing agreements for any purpose including recovery; to
place and maintain pipe and utility lines; to execute
oil, gas and mineral leases, division and transfer
orders, grants and other instruments;

(23) if at any time the Trustee is holding a trust
hereunder and a trust created hereunder or under another
instrument, and the terms and primary beneficiaries of
the trusts are substantially identical, to consolidate
and commingle them and hold them as a single trust,
provided that a trust exempt from the Generation-
Skipping Tax shall not be consolidated with a trust
subject to such tax unless the Trustee determines that
such consolidation is otherwise necessary or desirable;
and.

(24) to do all other acts in relation to the in-
vestment, management, disposition and control of the
property which in the judgment of the Trustee shall be
needful or desirable for the proper and advantageous
management of the trust.

Each of the foregoing powers shall be exercised in the best

interests of the respective beneficiaries by the Trustee during

the administration of a trust under this Agreement, and for a

reasonable period after termination of such trust, but only for so

long as no rule of law relating to perpetuities would be violated

thereby.

-22-

SMF/gj                    11/10/87

B.   At such times as the Trustee may be unable to exercise any voting or other rights with respect to corporate securities, and at such other times as the Trustee deems it advisable, the adult persons who are under no disability and to whom income may then be distributed from the trust holding such securities shall be entitled to exercise such rights in such manner as the majority in number of such persons shall determine.

C.   The Trustee need not set aside from income any reserves for obsolescence, depreciation, depletion, or the like.

### Section 4.   Concerning Life Insurance

A.   The Trustee may retain as a trust investment any insurance policies on the life of any person; may take out or otherwise acquire insurance on the life of any person (including me) in whose life the trust estate may have an insurable interest; may allow any policy to lapse or surrender it for cash or a paid-up policy; and may exercise any other right, including the election of any optional method of settlement. The Trustee shall have no duty to pay any premiums or take any other action with respect to any insurance policy or interest in a group insurance plan held in trust hereunder. Nothing herein contained shall be construed to prevent the Trustee from taking any action the Trustee may deem necessary or appropriate to preserve the value of any such insurance policy or interest owned by the Trustee, including, without being limited to (1) exercising any option, election, right or privilege, (2) borrowing from the insurer or others against the security of the policy or its proceeds, (3)

-23-

SMP/gj                     11/10/87

using dividends and the like to reduce premiums or increase coverage, and (4) to pay premiums, assessments, interest or principal on policy loans and the like with cash on hand (whether income or principal). In such event the Trustee may require such indemnification or other protection as the Trustee may deem reasonable.

B.    The Trustee may compromise claims arising in connection with any policy or other contractual arrangement but need not engage in litigation to enforce payment without indemnification for any resulting expense.

### Section 5. Limitations on Trustees

Notwithstanding any other provision of this Agreement: (1) Except as provided in Paragraph A of Article II, no Trustee shall have any power to purchase from or sell property to me, or to exchange property with me, or to loan money to me, the only right of a Trustee to deal with me being the right to receive additional property by gift or bequest as above set forth and the obligation to sell a life insurance policy contributed by me back to me upon the direction of a person designated as having such power; and (2) no Trustee shall have any power to exercise any discretion or power granted to a Trustee under this instrument or to do anything which would prevent the gifts by me to a Trustee from being complete for income, gift and estate tax purposes.

-24-

SMP/gj                        11/10/87

## ARTICLE IX

### Governing Law

Except with respect to questions of validity where title to real estate situated outside of Illinois is concerned, this Agreement and the trusts created shall in all respects and for all purposes be governed, controlled and regulated by the internal laws of the State of Illinois; all questions regarding admini-stration, construction, interpretation or validity shall be determined solely by such laws.

IN WITNESS WHEREOF, the Trustee and I have executed this Agreement on the date stated on the first page of this Agreement.

_____
Verla K. Regnery, Settlor

_____
Alvin Kiehl, Trustee

STATE OF ILLINOIS    )
                     ) SS.
COUNTY OF COOK       )

The foregoing instrument was acknowledged before me this 13 day of _____, 1987 by VERLA K. REGNERY, as Settlor.

_____

(SEAL)

My commission expires  9-23-89

-25-

SMP/gj                     11/10/87


STATE OF ILLINOIS    )
                     ) SS.
COUNTY OF COOK       )

     The foregoing instrument was acknowledged before me this 15
day of _December_ 1987 by ALVIN KIEHL, as Trustee.

                                        _____
                                             Notary Public

(SEAL)

My commission expires  9-23-89

                          ┌─────────────────────────────┐
                          │      "OFFICIAL SEAL"         │
                          │      Susan M. Powers         │
                          │ Notary Public State of Illinois │
                          │    Cook County, Illinois     │
                          │ My Commission Expires Sept. 23, 1989 │
                          └─────────────────────────────┘

This document prepared by
Chadwell & Kayser, Ltd.
8500 Sears Tower
Chicago, Illinois 60606-6592
(312) 876-2100

-26-

# Exhibit C

**The Prudential** 🜲

**Part 1 Application for Life Insurance to**
☒ **The Prudential Insurance Company of America**
☐ **Pruco Life Insurance Company**
**A Subsidiary of The Prudential Insurance Company of America**

No. 76-540-275 Q

| 1a. Proposed Insured's name—first, initial, last (Print) | 1b. Sex | 2a. Date of birth | | | 2b. Age | 2c. Place of birth |
|---|---|---|---|---|---|---|
| VERLA K. REGNERY | M ☐ F ☒ | Mo. 12 | Day 7 | Yr. 18 | 68 | CHICAGO, ILLINOIS |

| 3. ☐ Single ☐ Married ☒ Widowed ☐ Separated ☐ Divorced | 4. Social Security No. 320 / 01 / 5155 |
|---|---|

| 5a. Occupation(s) HOMEMAKER | 5b. Duties |
|---|---|

| 6. Address for mail  No. 7958 S. GARFIELD  Street  City BURR RIDGE  State ILLINOIS  Zip 60521 |
|---|

| 7a. Kind of policy ESTATE SELECT 200  If a Variable contract is applied for complete appropriate suitability form. | 7b. Initial amount $3,000,000 | 8. Accidental death coverage initial amount $ NONE |
|---|---|---|

**9. Beneficiary: (Include name, age and relationship.)**
a. Primary (Class 1): ALVIN KIEHL AS TRUSTEE OF THE VERLA K. REGNERY 1987 IRREVOCABLE TRUST U.A.D. 12/15/87

b. Contingent (Class 2) if any:

**10. List all life insurance on proposed insured. Check here if None ☐**

| Company | Initial amt. | Yr. issued | Kind (Indiv., Group) | Medical Yes No |
|---|---|---|---|---|
| INTEGRITY LIFE | $100,000 | 1986 | INDIVIDUAL | ☒ ☐ |
| | | | | ☐ ☐ |
| | | | | ☐ ☐ |
| | | | | ☐ ☐ |
| | | | | ☐ ☐ |

**11. Other person(s) proposed for coverage including the Applicant for Applicant's Waiver of Premium benefit (AWP)**

| Name—first, initial, last | Sex | Relationship to proposed Insured | Date of birth Mo. Day Yr. | Age | Place of birth | Total life insurance in all companies |
|---|---|---|---|---|---|---|
| a. | | Spouse | | | | $ |
| b. | | | | | | $ |
| c. | | | | | | $ |
| d. | | | | | | $ |
| e. | | | | | | $ |
| f. | | | | | | $ |

**12. Supplementary benefits and riders:**

| a. For proposed Insured  Type and duration of benefit | Amount | b. For spouse, children, Applicant for AWP  Type and duration of benefit | Amount |
|---|---|---|---|
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| ☐ Option to Purchase Additional Ins. | $ | ☐ Applicant's Waiver of Premium benefit | |

**13. State any special request.**

DATE TO SAVE AGE 68

APPLICANT and OWNER of POLICY SHOULD BE "ALVIN KIEHL AS TRUSTEE OF THE VERLA K. REGNERY 1987 IRREVOCABLE TRUST U.A.D. 12/15/87"

| 14. Has any person named in 1a or 11, within the last 12 months: | Yes | No |
|---|---|---|
| a. been treated by a doctor for or had a known heart attack, stroke or cancer (including melanoma) other than of the skin? | ☐ | ☒ |
| b. had an electrocardiogram for any physical complaint, or taken medication for high blood pressure? | ☐ | ☒ |

| 15. Premiums payable ☒ Ann. ☐ Semi-Ann. ☐ Quar. ☐ Mon. ☐ Pay. Budg. ☐ Pru-Matic ☐ Gov't. Allot. |
|---|

| 16. Amount paid $ ☒ None (Must be "None" if either 14a or b is answered "Yes".) |
|---|

| 17. Is a medical examination to be made on: | Yes | No |
|---|---|---|
| a. the proposed Insured? | ☒ | ☐ |
| b. spouse (if proposed for coverage)? | ☐ | ☐ |

| 18. If 17a or b is "Yes", is it agreed that no insurance will take effect on anyone proposed for coverage until the person(s) indicated in 17 have been examined, even if 16 shows that an amount has been paid? | Yes ☒ | No ☐ |
|---|---|---|

ORD 84376-86

Page 1 (Continued on page 2)

**Continuation of Part 1 of Application**

| | | Yes | No |
|---|---|---|---|
| 19. | Will this insurance replace or change any existing insurance or annuity in any company on any person named in 1a or 11? If "Yes", give their names, name of company, plan, amount, policy numbers and enclose any required state replacement form(s). | ☐ | ☒ |

20. Is anyone applying for, or trying to reinstate, life or health insurance on any person named in 1a or 11 in this or   Yes ☒  No ☐
any company? If "Yes", give amount, details and company. *ALTHOUGH ONLY $3,000,000 WILL BE PLACED, ADDITIONAL APPLICATIONS HAVE BEEN SUBMITTED TO NORTHWESTERN MUTUAL, MASS MUTUAL and EXECUTIVE LIFE*

| | | Yes | No |
|---|---|---|---|
| 21. | Does any person named in 1a or 11 plan to live or travel outside the United States and Canada within the next 12 months? If "Yes", give country(ies), purpose and duration of trip. | ☐ | ☒ |
| 22. | Has any person named in 1a or 11 operated or had any duties aboard an aircraft, glider, balloon, or like device, within the last 2 years, or does any such person have any plans to do so in the future? If "Yes", complete Aviation Questionnaire. | ☐ | ☒ |
| 23. | Has any person named in 1a or 11 engaged in hazardous sports such as: auto, motorcycle or power boat sports; bobsledding; scuba or skin diving; mountain climbing; parachuting or sky diving; snowmobile racing or any other hazardous sport or hobby within the last 2 years or does any such person plan to do so in the future? If "Yes", complete Avocation Questionnaire. | ☐ | ☒ |

24. Has any person (age 15 or over) named in 1a or 11 in the last 3 years:   Yes  No
    a. had a driver's license denied, suspended or revoked? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ ☒
    b. been convicted of three or more moving violations of any motor vehicle law or of driving while under the
       influence of alcohol or drugs? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ ☒
    c. been involved as a driver in 2 or more auto accidents? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ ☒
    If "Yes", give name, driver's license number and state of issue, type of violation and reason for license denial,
    suspension or revocation.

25. a. Has the proposed Insured smoked cigarettes within the past twelve months? . . . . . . . . . . . . . . . . . . . . . . . . . . Yes ☐  No ☒
    b. Has the spouse (if proposed for coverage) smoked cigarettes within the past twelve months? . . . . . . . . . . . . . Yes ☐  No ☐
    c. If the proposed Insured or spouse has ever smoked cigarettes, cigars or a pipe, show date(s) last smoked:

| | Cigarettes | | Cigars | | Pipe | |
|---|---|---|---|---|---|---|
| Proposed Insured | Mo. 1 | Yr. 86 | Mo. ___ | Yr. ___ | Mo. ___ | Yr. ___ |
| Spouse | Mo. ___ | Yr. ___ | Mo. ___ | Yr. ___ | Mo. ___ | Yr. ___ |

26. **Changes made by the Company.** (Not applicable in West Virginia)

To the best of the knowledge and belief of those who sign below, the statements in this application are complete and true. It is understood that, if any of the above statements (for example, the smoking data) is a material misrepresentation, coverage could be invalidated as a result. The beneficiary named in the application is for insurance payable upon death of (1) the Insured, and (2) an insured child after the death of the Insured if there is no insured spouse.

When the Company gives a Limited Insurance Agreement form, ORD 84376A-86, of the same date as this Part 1, coverage will start as shown in that form. Otherwise, no coverage will start unless: (1) a contract is issued, (2) it is accepted, and (3) the full first premium is paid while all persons to be covered are living and their health remains as stated in Parts 1 and 2. If all these take place, coverage will start on the contract date. If the Company makes a change as indicated in 26 it will be approved by acceptance of the contract. But where the law requires written consent for any change in the application, such change can be made only if those who sign this form approve the change in writing. No agent can make or change a contract, or waive any of the Company's rights or needs.

**Ownership:** Unless otherwise asked for above, the owner of the contract will be (1) the applicant if other than the proposed Insured, otherwise (2) the proposed Insured. But this is subject to any automatic transfer of ownership stated in the contract.

Dated at *Hinsdale, Illinois*  *1/13* , 19 *88*
       (City/State)

X *Verla K. Kearney*
Signature of Proposed Insured (if age 8 or over)

X *Glenn E. Scott* —TRUSTEE
Signature of Applicant (if other than proposed Insured —
If applicant is a firm or corporation, show that company's name)

Witness *H. Shean*
(Licensed agent must witness where required by law)

By
(Signature and title of officer signing for that company)

ORD 84376-86                  Page 2

# Exhibit D

NOV-07-2007  09:17        STORINO, RAMELLO & DURKIN                              P.16/42
                                                                                  25

# RESIGNATION OF TRUSTEE
## AND APPOINTMENT OF SUCCESSOR TRUSTEE

Mrs. Verla K. Regnery
c/o Mrs. Lynn Regnery
98 Tall Oaks Drive
Castle Hayne, NC 28429

Pursuant to Paragraphs A and E of Article VIII of the Verla K. Regnery 1987
Irrevocable Trust dated December 15, 1987, I hereby resign as trustee and appoint Thomas
Wallerich as successor trustee in my place effective November 10, 2006.

                                                    _Alvin Kiehl_

Signed and sworn to before me
this 10th day of November, 2006

_Notary Public_

OFFICIAL SEAL
Elaine P. Lenza
Notary Public, State of Illinois
My Commission Exp. 05/24/2008

## ACCEPTANCE

I hereby accept the appointment as successor trustee under the Verla K. Regnery 1987
Irrevocable Trust dated December 15, 1987 effective November 10, 2006.

                                                    _Thomas Wallerich_

Signed and sworn to before me
this 10th day of November, 2006

_Notary Public_

OFFICIAL SEAL
Elaine P. Lenza
Notary Public, State of Illinois
My Commission Exp. 05/24/2008

12/18/2007 4:27:30 PM [Eastern Standard Time]

# Exhibit E

ALVIN E. KIEHL
7958 S. Garfield
Burr Ridge, IL 60527
(630)-655-2541

September 28, 2007

Prudential Financial
Computershare Shareholder Services, Inc.
P.O. Box 43033
Providence, RI 02940-3033

Re:    Holder Account No. C 0014295437

To Whom It May Concern:

I serve as Trustee for the common stocks held by the Verla K. Regnery 1987 Irrevocable Trust.

In this regard, I enclose herewith a copy of correspondence I received indicating a transfer had occurred in April of 2007.

Would you be so kind as to forward to my attention copies of any and all documentation you have relating to that transfer. Of course, should you have any questions, please feel free to contact me.

Sincerely,

ALVIN E. KIEHL

Encl.

# Exhibit F

11/26/2007 MON 23:30 FAX    ☒001/004

### SHEAN & COMPANY
*Strategies for Controlling Wealth*

November 14, 2007    *11-27-07*

VIA FACSIMILE    215-784-3624

Ms. Mary Ryan
Supervisor, Death Claims
Prudential Insurance

Re:    Verla K. Regnery
       Policy #76 540 275

Dear Ms. Ryan:

Mrs. Regnery died on November 2, 2007. Prudential has been notified and might have already forwarded a claim form to the listed Trustee owner, Mr. Thomas R. Wallerich.

I forward the attached information as part of my duties to fully disclose all relevant information that I have in my possession. It describes an obvious conflict among the trust beneficiaries as to whom, among all the issues, is the legitimate Trustee owner.

Yours sincerely,

William F. Shean, Jr.

WFS/sg
Enclosures

cc:    Fred Regnery
       Lynn Regnery
       Gretchen Wallerich
       Thomas R. Wallerich
       Alvin Kichl

11/26/2007 MON 23:31 FAX                                    ☑002/004
03/09/2002  00:43  6307340632              FRED REGNERY           PAGE  01
NO. 17-2007  09:11        STORINO, RAMELLO & DURKIN                  P.02 '2

11/27/2007 12:20:29 PM [Eastern Standard Time]

ALVIN E. KIEHL
7958 S. Garfield
Burr Ridge, IL 60527
(630) 655-2541

September 28, 2007

Prudential Financial
Computershare Shareholder Services, Inc.
P.O. Box 43033
Providence, RI 02940-3033

Re:    Holder Account No. C 0014295437

To Whom It May Concern:

I serve as Trustee for the common stocks held by the Verla K. Regnery 1987 Irrevocable Trust.

In this regard, I enclose herewith a copy of correspondence I received indicating a transfer had occurred in April of 2007.

Would you be so kind as to forward to my attention copies of any and all documentation you have relating to that transfer. Of course, should you have any questions, please feel free to contact me.

Sincerely,

ALVIN E. KIEHL

Encl.

03/09/2002  00:43   6307340632                    FRED REGNERY                    PAGE  02

P.06/.0

+

## Irrevocable Stock Power (Continued)

**1** **For stock certificates, complete this portion and submit actual certificates**

Number of Whole Shares

Certificate No(s).                Certificate No(s).                Certificate No(s).

Certificate No(s).                Certificate No(s).                Certificate No(s).

**2** **Complete for dividend reinvestment/ESPP shares**

☐  Mark this box with an X to Transfer All    **OR**    Enter Number of Shares to Transfer (Indicate Fractional Shares if applicable)
Dividend Reinvestment/ESPP Shares

**3** **Complete for direct registration shares held in book entry**

☐  Mark this box with an X to Transfer All    **OR**    Enter Number of Whole Shares to Transfer
Direct Registration Shares                                          1,416

**4** **Authorized Signatures · Sign Here · This section must be completed for your instructions to be executed.**

The undersigned does (do) hereby irrevocably constitute and appoint Computershare as attorney to transfer the said stock, as the case may be, on the books of said Company, with full power of substitution in the premises.

The signature(s) to this Stock Power must correspond with the name(s) as written upon the face of the stock certificate, as the case may be in every particular, without alteration or enlargement or any change whatever, and must be guaranteed by a qualified Medallion Guarantee Member.

Note: Signature(s) must be stamped with a Medallion Signature Guarantee by a qualified financial institution, such as a commercial bank, savings bank, savings and loan, U.S. stock broker and security dealer, or credit union, that is participating in an approved Medallion Signature Guarantee Program. (A NOTARY SEAL IS NOT ACCEPTABLE)

X                          Medallion Guarantee Stamp (Notary Public is Not Acceptable)

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
WELLS FARGO BANK, N.A.
3/29/07
( 446 )
SECURITIES TRANSFER AGENT MEDALLION PROGRAM

Signature of current registered owner or legal representative    Signature of current registered owner or legal representative    Date (mm/dd/yyyy)

X   _____                                                         X   3/29/07

VERIFIED

11/27/2007 12:20:29 PM [Eastern Standard Time]

Frederick w. Regnery
2390 Lakeshore dr.
Fennville Mi. 49408

Dear Bill,

My mother purchased a $3.0m prudential policy from you in 1987, #76540275. Her
brother served as Trustee from its inception. It is my contention as well as my attorney's
that Alvin E Kiehl is still the trustee of this account. He was asked to resign by Gretchen
Wallerich last November by relating to him that my mother and I consented to this
change. At that time my mother was suffering from dementia and in fact would have
never agreed to replace her brother with the husband of a beneficiary particularly when it
was her fourth one. I did not find out about this change until sometime in August of this
year.
  \
In 2001 prudential issued my mother 4200 shares of their stock when they demutalized.
This stock was placed my mothers name for the first two years and then transferred to her
brother Alvin Kiehl. In April of this year under my sisters direction the 4200 shares were
withdrawn from the Alvin E. Kiehl trust. Alvin knew nothing of this transfer and in fact
Gretchen Wallerich and Tom Wallerich falsified the document with his signature. but
Alvin E Kiehl was clearly stated as the trustee #C0014295437. I have checked with
several employees and supervisors at Compushares and Tom Wallerich has never been
the trustee of this account and the only name that appeared on their records after my
mother turned this over to Alvin was Alvin E Kiehl.

My mother had indicated to me last December she was considering giving this stock to
someone else. Compushares confirmed that any person or entity that Alvin Kiehl
designated, the stock would be transferred accordingly.

This is one problem. The attempted unauthorized change of the insurance policy was the
second. Until such time that the three beneficiaries of the insurance trust sign and have
stamped with a bank medallion and they are forwarded to Mr. Shean for approval I am
requesting that #76540275 Verla K. Regnery trust 1987 irrevocable trust be frozen.

Needless to say $3.0m is a great deal more than $420,000.

Fred Regnery

# Exhibit G

03/25/2002  19:33    6307340632                    FRED REGNERY                        PAGE  01

11/30/2007 10:33:39 AM [Eastern Standard Time]

November 29.2007

Ms.Mary Ryan
Supervisor. Death claims
Prudential Insurance

Dear Ms Ryan.

In reference to policy # 76 540 275 the Verla K. Regnery trust I am Mrs Regnery's son
and purchased said policy in 1987 through Shean and Company. My mother passed away
on 11/2 after a lengthy battle with elder abuse. The Mill Valley police department,
District Attorney's office and the Marin County Coroner are currently investigating the
cause of her death.

During this time there were fraudulent transfers of her assets and replacements of her
trustees and executors. This was during a time my mother had been diagnosed with
clinical dementia and I was living out of the county. One transfer that was made was
through Compushares.4200 shares were withdrawn by a forgery of the trustee's name.
These were shares you issued in 2001 under the name of Verla. K Regnery.We will be
prosecuting this embezzlement with Compushares and Thomas Wallerich the person
making the forgery.

The policy # 76 540 275 bears the name of Thomas Wallerich as trustee. By working
with an Illinois attorney, Dan Letizia, his ex-wife one of the beneficiaries, Letezia and his
wife mis lead the trustee of 20 years into resigning. After Wallerich embezzled the 4200
shares of Prudential stock from Compushares on 4/16/06 he disappeared. I was told he
resigned from # 76 540 275 Wallerich now reappears and is attempting to withdraw the
$3,000,000.I now find out that he is using the same attorney as Gretchen Wallerich his
ex-wife. Gretchen Wallerich is the person being investigated for elder abuse and the
death of my mother.

I am instructing prudential to withhold paying the proceeds from policy # 76 540 275.If
you do so it is at your own risk. We are dealing with people who have committed fraud
and embezzlement and possibly elder abuse of my mother. I have an attorney in Chicago
and one in Marin County, California working with the local authorities to bring these
people to justice. I will hold Prudential accountable is the proceeds of this policy are paid
out to Tom Wallerich.

Fred Regnery

269-543-4633
fwregnery@yahoo.com

# Exhibit H

*Life Claims*

Dear Prudential Financial Shares, Death Claims                    12/31/2007

In reference to the Verla K. Regnery trust #76540275 and the appointment of Thomas Wallerich as trustee by Alvin E Kiehl in November of 2006 I have the following information.

Please reference the trust agreement dated 11/10/87 referred to as the Verla.K. Regnery 1987 Irrevocable Trust.

**Article 1 trust revocation.**Although legally my mother could not appear to have any decision making authority on the appointment or resignation of a trustee she in fact did.For 20 years she founded the gifting to pay the premiums on this policy. She and I appointed her brother Alvin Kiehl to the thankless unpaid job of administering the trust. In November of 2006 when the resignation and appointment of the new trustee occurred My mother had come down with clinical demensia and I was in China. I will be glad to forward you a copy of my passport as well as my mother's medical report.

My sisters decided to replace Alvin with my sister's fourth husband Tom Wallerich.To accomplish this they must get my unsuspecting uncle to agreed however he was told the three children and mother were in agreement. He was to receive a letter sign by all of us requesting his resignation but it was never done.

**Page 9 paragraph G** "Independent trustee" Wallerich was married to my sister for 22 years. They may claim he had no obligation to support my sister but it is simply not true. I wish I could find a woman who would support me for 22 years.

**Page 15 section 1 paragraph**  Because Alvin Kiehl did not receive the letter from the four of us asking him to resign he did not send out written notice to the beneficiaries or my mother than in fact he did resign.

**Page 16 paragraph J**  Thomas Wallerich did not give written notice to the beneficiaries or my mother of the acceptance and designation of the office of trustee. It is my strong belief this did not happen as it would have immediately notified me and then my mother of this change. I was in China from 5/23/06-11/22/06.

Other issues Wallerich left my sister in July of 2007 to parts unknown. If this change were legitimate for the right reasons my sister Lynn from North Carolina would have been insisting on his immediate resignation or she would have been in court. Seven months later Wallerich reappears and hires the same lawyer my two sisters have, Peter Flaxman.

The most important issue is the 4200 shares of prudential you issued to my mother in 2001.This was in a separate account at Computerhares.My mother received the dividends for two years and decided to give the stock to her brother, Alvin Kiehl. My mother's children did not know the stock existed at the time. The stock was titled as Alvin K.

1/2/2008 12:21:55 PM [Eastern Standard Time]

Kiehl trustee/owner. There was nothing in her will or trust regarding these shares. It was up to my mother who received those shares.

Wallerich and my sisters then found out that Alvin Kiehl was the trustee/owner of the 4200 shares so Wallerich forged Alvin Kiehl and my signature to withdraw the proceeds. He placed 1/3 of the stock in my forged account.

Alvin Kiehl is still the trustee of the irrevocable insurance trust. To have resigned he would have had to appoint an independent trustee, given written notice to the beneficiaries and the new trustee would have had to do the same.

I see five options for prudential to escape any liability.

1.Alvin E. Kiehl is still the trustee for reasons I have given.

2.Have each one of the beneficiaries prepare a trust document per the existing ones language

3.Seek court intervention and deposit the proceeds into a court supervised account.

4.My mother passed away on 11/2/2007 from unnatural causes. I will be filing an elder abuse wrongful death suit in the federal court in San Francisco. If I am successful my sisters will be deeded as predeceasing the decedent. This means they do not receive the 2/3 of the policy value. My mother's entire family of 50 will also be plaintiffs. If I prevail my sister's money will go to her family. If there was a way to hold their money until the outcome of the suit that would be the best option.

**5. We draft the three separate trust documents to present to Prudential. The three beneficiaries sign off and well as the two trustees and forward the documents to you for funding. This to me is the safest route for all. If you agree maybe you could send a letter to each of the parties.**

If Mr.Flaxman, my sisters and Wallerich were honest people you would have received three trust agreements weeks ago to deposit the proceeds in weeks ago. I have spent a great deal of money fighting for my mothers life.I do not want to spend any more fighting for what is rightfully my family's share.

I hope this is understandable and agreeable to prudential. Please contact me if you have any questions.

One last note. It is my opinion that if Peter Flaxman representing Tom Wallerich attempts in any fashion to have prudential pay out the money to Wallerich the attempt constitutes fraud.

Fred Regnery

fwregnery@yahoo.com

269-543-4633
630-310-4793

1/2/2008 12:21:55 PM [Eastern Standard Time]